**TEER et al. v. McGANN et al.**

No. 7908.

Court of Civil Appeals of Texas. Austin.

Oct. 25, 1933.

James V. Allred, Atty. Gen., Maurice Cheek, Asst. Atty. Gen., and Dean & Humphrey, of Huntsville, for appellants.

Sewell Myer, of Houston, and Hart, Patterson & Hart, of Austin, for appellees.

McCLENDON, Chief Justice.

This is a suit for injunction against the state board of control, the Texas prison board, the state comptroller, state treasurer, and Item Printing Company, to prevent the subletting of state printing contracts to the Texas prison board. The plaintiffs below (appellees here) are printers, members of a printers' union, and a Texas corporation engaged in the printing business, a bidder on state printing contracts. The appeal is from a final judgment awarding an injunction, the pertinent details of which will be noted later.

We have reached the conclusion that the questions sought to be adjudicated have become moot, and that the cause should be dismissed. The following statement from the record will suffice to a clear understanding of the present status of those issues:

In 1927 the Legislature, acting under an amendment to the Constitution (section 58 of article 16), reorganized the prison system (chapter 212, p. 298, Gen. Laws 40th Leg., articles 6166a to 6166z8, Vernon's Ann. Tex. Civ. St.). 'Articles 6166a and 6166o read:

"6166a. It shall be the policy of this State, in the operation and management of the Prison System, to so manage and conduct the same in that manner as will be consistent with the operation of a modern prison system, and with the view of making the System self-sustaining; and that those convicted of violating the law and sentenced to a term in the State Penitentiary shall have humane treatment, and be given opportunity, encouragement and training in the matter of reformation. All prisoners shall be worked within the prison walls and upon farms owned or leased by the State; and in no event shall the labor of a prisoner be sold to any contractor or lessee to work on farms, or elsewhere, nor shall any prisoner be worked on any farm or otherwise, upon shares, except such farm be owned or leased by the State of Texas."

"6166o. The Board shall have power to authorize the manager to sell and dispose of all products of all farms and industries connected with the prison system and all personal and moveable property, at such prices and on such terms and render such rules as it may deem best and adopt; and it may lease any real estate for agricultural or grazing purposes or lease other fixed property 'and appurtenances belonging thereto upon such terms as it may deem advantageous to the interests of the prison system."

In 1930 the Legislature passed an act for "Improvement of Prison System" (chapter 67, p. 215, Gen. Laws, 5th Called Sess. 41st Leg. [Vernon's Ann. Civ. St. art. 6203c]), from the purpose clause of which we quote: " * * * to renovate, improve and rehabilitate the Central Unit of the Texas Prison System at Huntsville * * * to the end that the prison population of Texas may be adequately housed, * * * and gainfully employed in such enterprises as will, in the opinion of the Prison Board, prove most remunerative to the State and beneficial to the prisoners. * * *" (section 1)

Section 9 of this act reads: "Authority is hereby given to the Prison Board and to the Board of Control to enter into contracts whereby the Prison Board may sell to the Board of Control any products produced by the prison system, whether such products be agricultural, or manufactured products, and it is hereby made the duty of the Board of Control to purchase all needed prison products when such purchase is economical."

In compliance with its enjoined duties, the prison board, at an expense of approximately $20,000, installed within the prison walls at Huntsville a printing plant, in the operation of which it used convict labor.

In 1931 a resolution was introduced in the Legislature (H. C. R. No. 29), authorizing and directing the board of control "to investigate the feasibility of making a contract with the State Prison Board relative to such Board doing a portion or all of the State's printing in the State Prison," and requesting the board of control, if it deemed it to the state's best interest, to enter into contract with the prison board to that end. The constitutionality of this resolution was referred to the Attorney General, who on March 24, 1931, delivered an opinion holding that such contract would be violative of section 21 of article 16 of the Constitution, and of articles 608 and 613, R. C. S., because the prison board could not make the required bond.

In the fall of 1931 the board of control advertised for bids for state printing covering the calendar years 1932 and 1933. Item Printing Company was the lowest bidder and received the award on eight items, and a contract was executed with all legal formalities, except the approval of the secretary of state, who withheld her approval upon the ground that the Item Company and the prison board had made a contract to sublet portions of the contract to the latter, which was in her opinion illegal under the Attorney General's opinion. She was later verbally advised by the Attorney General's department that the opinion had reference only to contracts between the state and the prison board, and not to contracts between the latter and others. She, however, still withheld her approval.

This suit was brought in December, 1931. Temporary injunction, pending final hearing, was sought, but not awarded, and final judgment was rendered July 25, 1932.

In the meantime no further bids were advertised for, and from time to time up to the date of trial the board of control let contracts for various items covered by the Item Company's contract, and at the price therein

stipulated, the major portions of which were filled by the prison board under its subcontract with the Item Company. These contracts were let without advertisement or competitive bids, as emergency requisitions under article 618, R. C. S.

Those portions of the decree relating to the board of control, prison board, and Item Company were in substance the following:

The board of control was prohibited from permitting the Item Company to furnish any of the state departments " * * * any printing or supplies, except in performance of such contract, if any, as hereafter shall be made between said Board of Control and said Item Printing Company after advertisement for such contract in the manner required by law, and, after such contract, if any, shall be awarded to said Item Printing Company as the lowest and best responsible bidder submitting a bid therefor."

The prison board was prohibited from using penitentiary labor or facilities for " * * * printing or binding or furnishing any of the stationery or supplies of like character for the State of Texas, or for the departments, institutions and boards of the State of Texas, and from doing any printing or binding for or furnishing any stationery or supplies of like character for defendant, Item Printing Company, or the individuals composing said partnership, which are to be supplied, furnished or delivered to the State of Texas, or to or for any of the departments, institutions, boards or officers of said State of Texas."

The Item Company was prohibited from furnishing any of the state departments " * * * any printing or supplies, except in performance of such contract, if any, as hereafter shall be made between said State Board of Control and said Item Printing Company * * * after advertisement for such contract in the manner required by law and after such contract, if any, shall be awarded to said defendants as the lowest and best responsible bidders submitting bids therefor, and * * * from using or employing any of the convicts * * * in doing any of the printing or binding or other work connected with fulfillment of any orders or requisitions for printing or binding or furnishing of supplies received from the State Board of Control."

The decree further provided that since no printing contract has been made since January 1, 1932, " * * * the provisions of this decree enjoining and restraining the defendants, as hereinabove set out, shall not be operative, but their effect is suspended, for a period of five weeks from September 13, 1932, or to the date of October 19, 1932, provided that within one week from September 13, 1932, said defendant, the State Board of Control, shall begin advertising for bids for said printing and supplies in the manner required by law, and shall in good faith thereafter continue said advertising in the manner and for the time required by law as a prerequisite to awarding contracts for said printing and supplies; if, however, said State Board of Control shall fail to commence said advertising within one week from September 13, 1932, or, if having commenced same, it shall not continue and complete same, as required by law precedent to awarding contracts for said printing and supplies, then, in either such event, said injunction shall immediately become operative against each and all defendants."

In a motion to advance filed by the Attorney General on June 23, 1933, it appears that all parties were obeying the decree, and by stipulation signed by counsel for the respective parties and filed October 18, 1933, it is shown that bids were advertised for and a contract let—not to the Item Company—covering the items in that company's contract for the years 1932 and 1933.

When the secretary of state declined to approve the Item Company's contract, it was the clear duty of the board of control to advertise for other bids; or, in any event, if the board felt such declination was arbitrary and subject to judicial review, to apply to the Supreme Court to compel approval by mandamus. The district court was without jurisdiction in that matter, even if such relief had been sought. The approval of the secretary of state was essential to a valid contract; and to continue indefinitely to award contracts, as emergency requisitions whatever the purpose, had the effect of evading the express constitutional and statutory requirements for competitive bids. Whether appellee's proper remedy was by mandamus in the Supreme Court against the board of control is not now important. See State Highway Comm. v. Tengg (Tex. Civ. App.) 57 S.W.(2d) 929. For our present purpose it may be conceded that the district court had jurisdiction to restrain the emergency contracts, pending further advertisement for bids. That portion of the decree has been obeyed and has served its purpose.

The decree provided by its express terms that it was not to become operative unless the board of control should fail to advertise for bids as therein provided, in which event it should become operative as to all defendants.

In the light of the pleadings and evidence, we do not construe the decree as intending to inhibit the prison board from dealing directly with the board of control or other state officers or instrumentalities. That issue was not presented, since the opinion of the Attorney General was to the effect that this could not legally be done, and there is

no intimation that either the prison board or board of control had any purpose to go counter to this view.

■ Since bids were advertised for in compliance with the terms of the decree, and a contract let with one not a party to this suit, the questions presented by the appeal, although of great public importance, have become academic.

■ No invaded right, nor threat of invasion of right, of any party to this litigation longer exists, and any opinion upon the questions now presented, however much desirable, would be merely advisory; power to render which is denied to the courts. Morrow v. Corbin (Tex. Sup.) 62 S.W.(2d) 641.

■ In order to remove all question as to the effect of the decree as res adjudicata in any future controversy which may arise, we think the proper practice is to reverse the trial court's judgment and dismiss the cause. Danciger, O. & R. Co. v. R. R. Comm. (Tex. Sup.) 56 S.W.(2d) 1075.

The trial court's judgment is reversed, and the cause dismissed.

Reversed, and cause dismissed.