Donald H. SHEFFIELD et al.,
Appellants,

v.

Honorable Dolph BRISCOE, Governor of Texas, et al., Appellees.

No. 12522.

Court of Civil Appeals of Texas, Austin.

April 20, 1977.

Rehearing Denied May 11, 1977.

O. Earl Luna, Thomas V. Murto, III, Luna & Murto, Dallas, for appellants.

John L. Hill, Atty. Gen., M. Lynn Taylor, Asst. Atty. Gen., Austin, for appellees.

O'QUINN, Justice.

Appellants,[1] as plaintiffs below, brought this action for declaratory judgment and to enjoin the Commissioner of Education from determining the amount of local funds assigned to each school district of the State, without first adjusting reported property values "to equalize the local school district effort."

Stated in the language of appellants, by this action appellants sought to obtain "a full and complete declaration with regard to . . . Sections 16.001 note 'Sec. 13,' 16.251, and 16.252 of the Texas Education Code," as amended in 1975 [Acts 1975, 64th Leg., p. 877, ch. 334], and to secure a court ". . . order that under [such sections, which deal with 'Financing of Public School Education'] . . . the Commissioner of Education is required to review reported values of school districts' property and to equalize such values prior to using such values in determining the amount of funds each district will be assigned as its local share and the amount of funds each district is to receive from the state in the Foundation School Program."

For purposes of this opinion, we will sometimes refer to appellants as the School District and to appellees as the State.

In district court the State answered by a plea for dismissal on the ground that the suit is one against the State which requires legislative permission for its filing and maintenance, and the further ground that declaratory judgment if rendered "would not terminate the uncertainty or controversy giving rise to the proceeding." Art. 2524–1, sec. 6, V.A.C.S. The State also moved to abate the suit until all other school districts of the state could be made parties on the ground that the other districts were necessary and indispensible parties "to a complete and just disposition of this controversy."

After hearing, the district court, in August of 1976, ordered the suit dismissed, upon findings (1) that this is an action against the State which is barred for want of consent and (2) that plaintiffs failed to show a justiciable controversy upon which declaratory relief might be granted. The trial court declined to make any finding as to the State's plea to abate the suit until all school districts of the state could be joined as necessary and indispensible parties.

Appellants bring four points of error. Under the first two points appellants challenge the trial court's order of dismissal because, appellants contend, (1) the suit is not one against the State and (2) there exists a justiciable controversy upon which relief may be granted under the Uniform Declaratory Judgments Act.

We will affirm the judgment of the trial court, upon the grounds and for the reasons stated subsequently in this opinion.

The extensive amendment in 1975 of Chapter 16, titled *Foundation School Program,* of the Texas Education Code (as found in Acts 1975, 64th Leg., p. 877, ch. 334) included the several statutes appellants rely upon as a basis for their suit. Section 16.001 of the Code (amended in Section 1 of the amendatory Act of 1975) declares the State Policy "that each student enrolled in the public school system shall have access to programs and services that are appropriate to his educational needs and that are *substantially equal* to those available to any similar student, notwithstanding varying local economic factors." (Emphasis added)

Section 16.251, stating the general rule for financing the program, fixes the limits of total cost, and provides that the program "shall be financed by:

"(1) ad valorem tax revenue *generated by an equalized local school district effort;*

---

1. Appellants are Donald H. Sheffield, Stephen T. Jordan, and Eugene Matthews, president, vice-president and secretary, respectively, of the Board of Trustees of the Carrollton-Farmers Branch Independent School District, and the District; appellees are the Honorable Dolph Briscoe, Governor of Texas, and Dr. M. L. Brockette, Commissioner of Education of Texas, represented here by the Attorney General.

"(2) state and county available school funds distributed in accordance with law; and

"(3) state funds appropriated for the purposes of public school education and allocated to each district *in an amount sufficient to finance the cost of each district's Foundation School Program not covered by other funds specified in this subsection*." (Emphasis added)

Section 16.252 prescribes the "Local Share of Program Cost" in this language:

"(a) A school district's share of its *guaranteed entitlement* under the Foundation School Program is determined by multiplying the *total taxable value of property in the district* by an index rate of 30 cents per $100 valuation for the 1975–1976 school year and 35 cents per $100 valuation for each school year thereafter." (Emphasis added)

For reasons no doubt apparent to the Legislature, but not disclosed by the record in this case, certain "provisos" were added to the above general statement, to cover only the school years of 1975–1976 and 1976–1977, which provisions are not at issue in this suit.

Section 16.252, in subsection (b) provides that:

"A district's share of the program cost for the 1975–1976 and 1976–1977 school years is based on the *value of the district's property* for the 1974 tax year *as reported in the 'Official Compilation of 1974 School District Market Value Data,' Office of the Governor, State of Texas*. The commissioner may adjust the values reported in the official compilation to correct apparent discrepancies and may reduce the local share of a district in which local natural or economic disaster has dramatically reduced the value of the property since 1974. The commissioner's decision is final. For succeeding school years, a district's share is based on the value of its property for the tax year commencing in the school year two years before the school year for which the share is calculated. However, the commissioner may reduce the local share of a district in which local natural or economic disaster has dramatically reduced the value of taxable property in the intervening two-year period." (Emphasis added)

In Section 10 of the amendatory Act of 1975 the Legislature provided that:

"The governor shall conduct a study to determine methods of allocating state funds to school districts which will insure that each student of this state has access to programs and services that are appropriate to his educational needs regardless of geographical differences and varying local economic factors."

By this provision the Legislature prescribed a mode of achieving reality in the "State Policy," as declared under Section 1 of the Act, by amendment of Section 16.001 of the Code previously noted.

Section 10 of the Act of 1975 also prescribed in subsection (b) that:

"The study [conducted by the Governor] shall include a determination of *each school district's ability to support public education based on the value of taxable property in the district*." (Emphasis added)

Under subsection (f), provisions of Section 10 expire August 31, 1977.

Section 13(a) of the Act provides:

"Not later than July 15, 1975, the governor shall transmit to the commissioner of education the *Official Compilation of 1974 School District Market Value Data* [referred to in Section 16.252, already noted] prepared by his office with all necessary adjustments and corrections which the facts warrant."

Pursuant to subsection (b) of Section 13:

"The commissioner of education shall appoint a review panel consisting of five persons representing different areas of the state who are knowledgeable in the field of property taxation to *review all questions relating to the property values reported for school districts in the official compilation* and to recommend *necessary adjustments based on factual evidence* to the commissioner." (Emphasis added)

To enable the Governor to conduct the study required by Section 10, the Legislature appropriated $5,000,000. For review of "the official compilation" by the panel appointed for that purpose by the Commissioner, the Legislature provided $200,000. Provisions in Section 13 of the Act for "necessary adjustments and corrections" of the official compilation of 1974 data by the Governor and "necessary adjustments based on factual evidence to the commissioner," were made immediately effective by the Legislature, that date being established as June 6, 1975.

For the period already referred to, the two school years beginning in 1975 and ending in 1977, the share of a school district in the state program is based upon property values for 1974, as found in the "Official Compilation of the 1974 School District Market Value Data" furnished the Commissioner of Education by the Governor. For the school years succeeding this first period, a school district's share "is based on the value of its property for the tax year commencing in the school year two years before the school year for which the share is calculated." Subsection (b) of Article 16.252, *supra.*

Thus it is evident that the official compilation for 1974, as delivered to the Commissioner by the Governor, will no longer be the basis for a district's sharing, commencing with the school year 1977–78, when the value of the district's property *for* 1975 becomes the base. These values are required to be reported by the district tax assessors under Article 16.256. That statute provides: "Each school district tax assessor shall report to the commissioner the *full taxable value of property* in the district each year. The tax assessor shall also report the *assessed value* and *assessment level* utilized for tax purposes of all property in the district." (Emphasis added) Section (a), Article 16.256.

The State contends in this suit, and we are in agreement, that the Commissioner is not required to conduct a statewide equalization program in review of the Governor's compilation for the year 1974, but only to determine whether specific valuations within in the compilation were accurate. Appellants concede that such review of the appellant school district's valuations was made, but complain that the Commissioner should have gone beyond that examination and should have made a study of values in the more than 1,100 school districts of the state, in addition to the adjustments and corrections made previously by the Governor's office.

Section 13 of the Act of 1975, which amended Chapter 16 and other portions of the Education Code, sets out, as already noted, the duties of the Governor and the Commissioner with respect to the "Official Compilation of 1974 School District Market Value Data." Under subsection (a) the Governor was directed to transmit the "Official Compilation" to the Commissioner "with all necessary adjustments and corrections which the facts warrant." It is apparent that the Governor complied with that law and delivered the "Official Compilation" to the Commissioner by July 15, 1975, as required by Section 13, and it must be assumed that the Governor caused to be made "all necessary adjustments and corrections which the facts warrant."

Subsection (b) and Section 13 direct the Commissioner to "appoint a review panel consisting of five persons representing different areas of the state who are knowledgeable in the field of property taxation to review all questions relating to property values reported for school districts in the official compilation and to recommend necessary adjustments based on factual evidence to the commissioner."

Subsection (c) allows a *per diem* compensation of $75 for members of the reviewing panel, and subsection (d) appropriates to the Commissioner, for the biennium ending August 31, 1977, "the sum of $200,000 to carry out the provisions of this section."

We are not persuaded by forceful argument in behalf of appellant school district that the Commissioner, acting through his appointed review panel, was under a clear statutory duty to consider questions of disparities in property tax valuations among

the school districts throughout the state. Viewing the Act in its entirety, we conclude that the Commissioner and the review panel were directed to consider only questions affecting the accuracy of specific valuations within the "Official Compilation."

Appellant school district in effect seeks to obtain a complete review and revision of valuations for all school districts in the state, even after review by the panel of the district's valuations as reflected by the "Official Compilation." This suit is not an administrative appeal from a decision by the Commissioner, but is a separate suit to require administrative action of the Commissioner in addition to review admittedly made with respect to valuations of appellant school district.

It is firmly established that a suit for declaratory judgment, as here, is subject to the rule of state immunity from suit without its consent, and we do not understand appellants to contend otherwise. *W. D. Haden Company v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 839 (1958).

By this suit appellants seek to require the Commissioner of Education to perform certain extensive acts of review which we conclude are not required of him by the statutes upon which appellants rely. It is a suit therefore to control action of the State in review of property valuations contained in the "Official Compilation" prepared under direction of the Governor, who thereafter made "all necessary adjustments and corrections" warranted by the facts. We find no authority in the statute to compel the Commissioner and the review panel to duplicate the work already done by the Governor.

The purpose of this suit against State officials is to control action of the State and therefore cannot be maintained without consent of the Legislature. *Griffin v. Hawn*, 161 Tex. 422, 341 S.W.2d 151, 152 (1960), and cases there cited.

In view of our holding that this action is a suit against the State and not maintainable in the absence of consent, we do not reach the remaining issues raised under the points of error.

The judgment of the trial court dismissing the cause is affirmed.

Affirmed.