PRINTING INDUSTRIES ASSOCIA-
TION OF TEXAS et al.,
Appellants,

v.

DIRECTOR OF the DEPARTMENT OF
AGRICULTURE AND ENVIRONMENT
et al., Appellees.

No. 12986.

Court of Civil Appeals of Texas,
Austin.

Oct. 3, 1979.

Rehearing Denied Oct. 31, 1979.

Adrian M. Overstreet, Jr., Mark T. Mitchell, Kammerman, Yeakel & Overstreet, Austin, for appellants.

Mark White, Atty. Gen., Paul R. Gavia, Asst. Atty. Gen., Austin, for appellees.

O'QUINN, Justice.

By this lawsuit two corporations and one voluntary association, in behalf of entities engaged in commercial printing and binding in Texas, seek to enjoin directors and executive officers of more than thirty departments and agencies of the State of Texas from purchasing or using printing equipment claimed to be in derogation of Article XVI, section 21, of the Constitution and statutes enacted under authority of the Constitution.

The attorney general, representing the state officials who were named defendants, filed special exceptions, which the trial court sustained, based in the main on the grounds that plaintiffs failed to state a cause of action and did not plead legislative or statutory permission to bring suit against the State. Upon plaintiffs' declining to amend, the trial court ordered the suit dismissed.

Plaintiffs have appealed and bring eleven points of error. Upon the conclusion that plaintiffs pleaded a cause of action against directors and executive officers of the named departments and agencies for which legislative or statutory permission to sue was not required, we will reverse the judgment of the trial court and remand the cause for trial.

The initial question is whether this suit is against the State, requiring prior consent to sue, granted either by statute or other action of the Legislature.

██ It is settled law that if the purpose of a lawsuit, brought against officials of the State, is to control action of the State, or subject it to liability, the suit is not maintainable without express consent of the Legislature. *Griffin v. Hawn*, 161 Tex. 422, 341 S.W.2d 151 (1960), and cases cited there; *Sheffield v. Briscoe*, 550 S.W.2d 160 (Tex. Civ.App. Austin 1977, writ ref'd n. r. e.); *Oxford v. Hill*, 558 S.W.2d 557 (Tex.Civ. App. Austin 1977, writ ref'd); *Bullock v. Hardin*, 578 S.W.2d 550 (Tex.Civ.App. Austin 1979, writ ref'd n. r. e.).

██ Where the acts of the officials are not lawfully authorized, and therefore not acts of the State, an action against the officials, brought by a person or persons whose rights have been invaded, denied, or violated by such acts and who seek determination or protection of such rights, is not a suit against the State within the rule of immunity of the State from suit. *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709 (1945); *W. D. Haden Company v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838 (1958); *Oxford v. Hill, supra* ; *Bullock v. Hardin, supra.*

Plaintiffs in this suit are Printing Industries Association of Texas and Printing Industries of the Gulf Coast, corporations organized under the laws of Texas, and Printing Industries of Austin, a voluntary association of printers, with its principal place of business in Austin. Essentially the plaintiffs contend that, because prohibited by the Constitution of Texas and legislative enactment in conformity with the Constitution, the state officials and their agencies sued may not lawfully perform their own printing, ". . . nor is any Defendant legally entitled to perform printing services for any other Defendant, thus any printing done by the Defendants is not state action as it exceeds their constitutionally permissible authority." Plaintiffs further alleged in effect that the defendant agencies are acting in violation of the Constitutional provision which requires that printing and binding for the State, with limited exceptions, be performed under contract, given to the lowest responsible bidder.

Article XVI, section 21, of the Constitution, as adopted in 1876, dealt with printing and binding in this language:

"All stationery, and printing, except proclamations and such printing as may be done at the Deaf and Dumb Asylum, paper, and fuel used in the Legislative and other departments of the government, except the Judicial Department, shall be furnished, and the printing and binding of the laws, journals, and department reports, and all other printing and binding and the repairing and furnishing the halls and rooms used for the meetings of the Legislature and its committees, shall be performed under contract, to be given to the lowest responsible bidder, below such maximum price, and under such regulations, as shall be prescribed by law. No member or officer of any department of the government shall be in any way interested in such contracts; and all such contracts shall be subject to the approval of the Governor, Secretary of State and Comptroller."

When examined in detail, part by part, section 21 provides, as applicable to the main issue in this case:

That all (1) stationery and printing (*Except*:

1. proclamations and
2. such printing as may be done at the Deaf and Dumb Asylum,
3. and, except further, the Judicial Department),

and (2) paper and (3) fuel used in the Legislature and other departments of the government shall be furnished, and (4) printing and (5) binding of the laws, journals, department reports, and (6) all other printing and binding and (7) repairing and furnishing the halls and rooms used for the meetings of the Legislature and its committees "*shall be performed under contract, to be given to the lowest responsible bidder*, below such maximum price, and under such regulations, as shall be prescribed by law." (Emphasis added).

The Deaf and Dumb Asylum, named in section 21 in 1876, was designated the Texas School for the Deaf by the Legislature in 1949 (Article 3205a, V.A.T.S.; Acts 1949, 51st Leg., p. 325, ch. 158, sec. 1). Subsequent changes have been made in that institution's designation and its management. In 1977, the Legislature, by S.J.R. 50, Acts 1977, 65th Leg., p. 3369, proposed an amendment to section 21 of Article XVI of the Constitution, and the amendment was adopted by the electorate of Texas at an election held November 7, 1978.

The caption of Senate Joint Resolution No. 50, proposing the amendment, provided in full:

"Proposing an amendment to the Texas Constitution to delete the archaic reference to the 'Deaf and Dumb Asylum,' to allow certain products manufactured by handicapped individuals in nonprofit rehabilitation facilities to be purchased by the State of Texas, and to eliminate the formality of involvement in such transactions by the Governor of Texas, the Secretary of State, and the Comptroller of Public Accounts of Texas."

The proposition, on which the amendment was submitted to the voters, provided that the voter might vote FOR or AGAINST

". . . the constitutional amendment deleting the archaic reference to the 'Deaf and Dumb Asylum,' allowing certain products and services of handicapped individuals to be used by agencies and departments of state government, requiring the procurement of other products and services required in the operation of state government to be made under bids awarded to the lowest responsible bidder, making all such procurement processes subject to laws enacted by the legislature, and eliminating the requirement that the Governor of Texas, the Secretary of State, and the Comptroller of Public Accounts of Texas be personally involved with such transactions."

Section 21, as amended in 1978, now provides:

"All stationery, printing, fuel used in the legislature and departments of the government other than the judicial department, printing and binding of the laws, journals, and department reports, and all other printing and binding and the repairing and furnishing of the halls and rooms used during meetings of the legislature and in committees, except proclamations and such products and services as may be done by handicapped individuals employed in nonprofit rehabilitation facilities providing sheltered employment to the handicapped in Texas, shall be performed under contract, to be given to the lowest responsible bidder, below such maximum price and under such regulations as shall be prescribed by law. No member or officer of any department of the government shall in any way have a financial interest in such contracts, and all such contracts or programs involving the state use of the products and services of handicapped individuals shall be subject to such requirements as might be established by the legislature."

Close comparison of the original section 21 and the amended version fails to disclose any significant change regarding requirements that printing and binding be done by contract, except that the former allowance of printing and binding by the Deaf and

Dumb Asylum has been enlarged to cover ". . . such products and services as may be done by handicapped individuals employed in nonprofit rehabilitation facilities providing sheltered employment to the handicapped in Texas . . ."

The printing industries as plaintiffs below contended, and contend on appeal, that the defendant agencies are acting unlawfully in violation of section 21 of Article XVI of the Constitution. Specifically, plaintiffs alleged that because of such violations they ". . . will suffer irreparable harm, damage and injury unless the acts and conduct of Defendants above complained of are enjoined in that any and all printing performed by a state department or agency for itself or another department or agency is in derrogation [sic] of the competetive [sic] bidding requirement of state law and reduces or eliminates the demand for such printing by commercial, private enterprises in general and Plaintiffs in particular."

In enacting the "Interagency Cooperation Act," to permit state agencies to render services for other state agencies, the Legislature explicitly excepted the services, supplies, and materials covered by section 21 of Article XVI in this language:

"Provided, however, no agency shall supply any services, supplies, or materials to another agency which are required by Section 21 of Article 16 of the Constitution of Texas to be supplied under contract given to the lowest responsible bidder." Article 4413(32), Sec. 3, V.A.T.S.; Acts 1953, 53rd Leg., p. 841, ch. 340, as amended Acts 1965, 59th Leg., p. 564, ch. 287).

The attorney general in behalf of the agencies makes the singular argument on appeal that despite the provisions of the Constitution requiring that printing and binding be performed by contract, except in limited instances which are specified, the State is required to meet its own printing needs as much as possible before letting contracts to the lowest responsible bidder.

That argument is advanced for example in the following language:

"For over 100 years the agencies of the State of Texas have provided for at least part of their own printing and duplication. Against this background of practical and contemporaneous construction of Article XVI, § 21, it is clear that the provision requires the State to meet its own printing needs as much as possible and that it further requires the State to contract any printing it is unable to perform to a commercial printing firm which is the lowest responsible bidder."

■ Appeal comes to this Court from action of the trial court dismissing the suit, after sustaining special exceptions, and before any evidence of course was introduced. We have only law questions at this stage of the litigation to decide. It is our conclusion that plaintiffs sufficiently alleged unlawful acts of the agency officials and the effect such acts might have on the rights of the complaining parties. We hold that the suit was maintainable as an action against the state officials, acting outside their lawful authority, and that invasion of the rights of plaintiffs was alleged with sufficiency to maintain the suit.

Since the cause will be remanded for trial, it is appropriate to observe that through the years, in not fewer than a dozen instances, attorneys general of the State have advised agency officials and officers of the Legislature regarding the mandatory provisions of section 21 of Article XVI.

In addition, this Court has in at least one instance had occasion to consider the question of what constitutes "printing" within the language of a provision first placed in the Constitution more than one hundred years ago. In *State v. Steck Company*, 236 S.W.2d 866 (Tex.Civ.App. Austin 1951, writ ref'd), this Court held that the officers representing the State had failed to follow the requirements and procedure prescribed by Article XVI, section 21, of the Constitution, and that a contract for "printing" cigarette tax stamps, though manufactured by the "decalcomania process," rather than by ordinary printing, was unenforceable and the State was not bound.

853

The judgment of the trial court is reversed. The cause is remanded to district court for trial.