OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

April 13, 2001

The Honorable David Swinford
Chair, Agriculture and Livestock Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0368

Re: Whether a municipality may provide labor and equipment to construct utilities on public easements and rights-of-way to serve a private subdivision (RQ-0313-JC)

Dear Representative Swinford:

On behalf of the City of Dumas (the "City"), you ask whether the City may extend utilities to a residential subdivision on public easements and rights-of-way using City labor and equipment.[1] Sections 402.001 and 402.002 of the Local Government Code explicitly authorize the City to do so.

Although your letter provides little background, the Texas Municipal League has provided relevant facts,[2] and counsel for the City has confirmed the Municipal League's information.[3] The Texas Municipal League reports that the City "has not experienced extensive growth [and] does not routinely extend its utility mains to serve new development," but it has, for some past projects, contracted with private contractors to construct the facilities. TML Letter, *supra* note 2, at 1. City counsel also indicates that, in general, when the City receives a request to extend utility lines, it requires the requestor to pay for the labor and materials and to donate the utility lines to the City, and then the City reimburses the requesting developer as private home owners tap into the utility lines. *See* Telephone Conversation, note 3; *cf. Crownhill Homes, Inc. v. City of San Antonio*, 433 S.W.2d 448, 460 (Tex. Civ. App.–Corpus Christi 1968, writ ref'd n.r.e.) (suggesting that some municipalities refund water-main-extension costs to developers while others do not). But in this case, the City would like to provide its own labor and equipment to extend utility mains to a new

---

[1]Letter from Honorable David Swinford, Chair, Committee on Agriculture and Livestock, Texas House of Representatives, to Ms. Susan D. Gusky, Chair, Opinion Committee, Office of the Attorney General (Nov. 15, 2000) (on file with Opinion Committee) [hereinafter Request Letter]; *see also* Letter from Thomas C. Moore, Moore, Lewis, Russwurm & Elliott, P.C., to Honorable David Swinford, Chair, Committee on Agriculture and Livestock, Texas House of Representatives (Nov. 8, 2000) (on file with Opinion Committee, attached to Request Letter) [hereinafter Request Letter].

[2]*See* Letter from Monte Akers, Director, Legal Services, Texas Municipal League, to Ms. Susan D. Gusky, Chair, Opinion Committee, Office of the Attorney General (Dec. 20, 2000) (on file with Opinion Committee) [hereinafter TML Letter].

[3]Telephone Conversation with Tom Moore, Moore, Lewis, Russwurm & Elliott, P.C. (Feb. 9, 2001) [hereinafter Telephone Conversation].

residential subdivision to provide residents with City gas, water, and sewer services, rather than to contract with a third party to do so. *See* TML Letter, *supra* note 2, at 1. The subdivision's developer and the City have agreed that the developer will compensate the City by donating park land to the City. *See id.* The residential subdivision to be served in this case "is not a private, gated community; . . . the easements and rights-of-way along which the utility lines will be installed are public in nature; and the facilities involved are utility mains rather than private distribution lines." *Id.*; *cf. Crownhill Homes, Inc.*, 433 S.W.2d at 450 & 451 n.2 (describing "off-site or approach mains" and distinguishing "on-site or local benefit mains"). Thus, the facilities to be extended do not cross private property and do not connect directly to private residences. *See* TML Letter, *supra* note 2, at 1. Rather, a private home owner will pay to have his or her home connected to the City's utility lines, which run in public easements or rights-of-way. *Id.* One or more local contractors question the City's authority to use City labor and equipment to extend the utility lines.

We refer to the subdivision as a "residential subdivision" rather than a "private subdivision." You describe the subdivision as private, *see* Request Letter, *supra* note 1, at 1, but you state that the subdivision is not gated. We deduce, therefore, that subdivision streets are open to the general public. *See* TML Letter, *supra* note 2, at 1. We consequently presume that your phrase "private subdivision" refers to a subdivision of private residences.

We assume that the current City charter permits the proposed use of City labor and equipment. *See* Telephone Conversation, *supra* note 3. This office normally defers to a city official's construction of a city charter. *See* Tex. Att'y Gen. Op. No. JC-0143 (1999) at 3.

Sections 402.001 and 402.002 of the Local Government Code explicitly authorize the City to extend its utilities in the circumstances about which you ask. Section 402.001 expressly permits a municipality to "construct[] or operate a utility system inside or outside the municipal boundaries and [to] regulate the system in a manner that protects the interests of the municipality." Tex. Loc. Gov't Code Ann. § 402.001(b) (Vernon 1999). A "utility system" is defined to mean "a water, sewer, gas, or electricity system." *Id.* § 402.001(a). Section 402.002(b) expressly permits a home-rule municipality to own a utility system and to construct necessary facilities:

> (b) A home-rule municipality may . . . own, construct inside or outside the municipal limits, and maintain and operate a gas system, electric lighting plant, sewage plant, or other . . . public utility and may require and receive compensation for services furnished for private purposes or otherwise. The municipality may use eminent domain authority to appropriate real property, rights-of-way, or other property as necessary to efficiently carry out those objects. . . . In its charter, the municipality may adopt rules it considers advisable for the acquisition or operation of the . . . public utility.

*Id.* § 402.002(b) (Vernon Supp. 2001).

Because a municipality has express authority to own, construct, and operate public utilities, it may decide to extend its utility lines to serve a residential subdivision, and its decision is subject to limited review. *See Crownhill Homes, Inc.*, 433 S.W.2d at 457. With respect to its public utilities, a municipality's exercise of discretion may be reviewed only for abuse. *See id.* at 458-59. Moreover, under sections 402.001 and 402.002, a municipality is not obligated to receive from those for whom it extends utilities some sort of consideration. A municipal governing body can establish its own policy as to the circumstances in which it will extend utility lines and what it will require of a requesting developer, so long as the policy is applied impartially. *See id.* at 457.

Given that the City has express statutory authority to extend its utilities—and we do not understand the contractors here to question the City's authority in this regard—the City may choose to accomplish the extension using City labor and equipment or by contracting with a third party. Competitive-bidding laws do not prohibit a municipality from using municipal labor or equipment to perform desired services. *See Director of Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 268 (Tex. 1980) (stating that article XVI, section 21 of Texas Constitution "does not prohibit the State from performing its own printing needs"); *cf.* Tex. Att'y Gen. Op. Nos. DM-242 (1993) at 3 (concluding that school district need not competitively bid contract if it wished to perform work with district employees); V-506 (1948) at 3 (stating that county commissioners court has option of performing road work itself, rather than using statutory competitive-bidding procedure).

Counsel for the City suggests that the issue you raise implicates article III, section 52 and article XI, section 3 of the Texas Constitution. *See* Telephone conversation, *supra* note 3 (mentioning article III, section 52 of Texas Constitution). Article III, section 52 of the Texas Constitution forbids the legislature generally to authorize a municipality "to grant public money or thing of value" to a private entity. TEX. CONST. art. III, § 52. Article XI, section 3 similarly forbids a municipality to donate funds or things of value to a private entity. *See id.* art. XI, § 3. Consequently, a municipality may not gratuitously apply public resources to a private use, but it may expend public resources to directly accomplish a public purpose, even if the expenditure incidentally benefits a private interest. *See* Tex. Att'y Gen. Op. No. JC-0016 (1999) at 3; *cf.* Tex. Att'y Gen. Op. No. JC-0288 (2000) at 2 (discussing "public use"). A utility extension serves a public purpose. *See also A. & M. Consol. Indep. Sch. Dist. v. City of Bryan*, 184 S.W.2d 914, 915-16 (Tex. 1945) (concluding that land owned by city for electric lines is used for public purpose); *Lenzen v. City of New Braunfels*, 35 S.W. 341, 343 (Tex. Civ. App. 1896, no writ) (suggesting public benefits of utility service generally).

# S U M M A R Y

A municipality may use municipal labor and equipment to extend utility lines on public easements and rights-of-way to serve a residential subdivision. *See* TEX. LOC. GOV'T CODE ANN. §§ 402.001, .002 (Vernon 1999 & Supp. 2001).

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

SUSAN D. GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee