**Harmon R. OXFORD, Appellant,**

v.

**Honorable John L. HILL, Attorney General, et al., Appellees.**

**No. 12580.**

Court of Civil Appeals of Texas, Austin.

Nov. 16, 1977.

Rehearing Denied Jan. 4, 1978.

Brinkley L. Oxford, Royce A. Oxford, Oxford & Oxford, Edinburg, for appellant.

John L. Hill, Atty. Gen., M. Lynn Taylor, Asst. Atty. Gen., Austin, for appellees.

O'QUINN, Justice.

Appellant, Harmon Robert Oxford, who was plaintiff below, brought this suit for declaratory judgment, praying for temporary restraining order "until this [trial] Court has time to try the case on the merits," and seeking to establish invalidity of the Texas Child Care Licensing Act (Art. 695a–3, V.A.C.S.; Acts 1975, 64th Leg., p. 2240, ch. 708, eff. Jan. 1, 1976). Oxford named as defendants the Attorney General of Texas and the Commissioner of the Texas Department of Public Welfare.

The Attorney General, for his office and the Commissioner, answered by exception and general denial, and also by plea in abatement on the ground that the suit is against the State of Texas to which the State has not consented. The trial court found Article 695a–3 constitutional and sustained the plea in abatement and dismissed the case.

Oxford has appealed and brings two points of error. We will overrule both points and affirm judgment of the trial court.

The record shows that appellant is an employee of the Roloff Evangelistic Enterprises, Inc., operating a home in Zapata County "for rehabilitating boys who have been convicted of being juvenile delinquents or whose parents placed them in homes operated by the Plaintiff for correction and rehabilitation." Oxford contended below and contends on appeal that control over child care homes vested in the State Department of Public Welfare, as set out in Article 695a–3, impinges upon his free exercise of religion guaranteed by the First Amendment of the Constitution of the United States.

Appellees contend on the contrary that the Act is constitutional and that failure of Oxford to obtain legislative consent to sue is fatal to maintenance of this action.

The Legislature declared its intent in Section 1(b) of the Child Care Licensing Act in this language:

"It is the *legislative intent to protect the health, safety, and well-being of the children of the state who reside in child care facilities.* Toward that end, it is the purpose of this Act to establish statewide minimum standards for the safety and protection of children in child care facilities, to insure maintenance of these standards, and to regulate such conditions in such facilities through a program of licensing. It shall be the policy of the state to insure protection of children under care in child care facilities, and to encourage and assist in the improvement of child care programs. *It is the further legislative intent that the freedom of religion of all citizens shall be inviolate. Nothing in this Act shall give any governmental agency jurisdiction or authority to regulate, control, supervise, or in any way be involved in the form, manner, or content of any religious instruction or the curriculum of a school sponsored by a*

*church or religious organization."* (Art. 695a–3, sec. 1(b). (Emphasis added).

Oxford insists that the Act is unconstitutional because it ". . . flagrantly violates the separation of church and state . . ." The First Amendment to the Constitution of the United States in unqualified language prohibits the establishment by government of religion and protects the free exercise of religion in these words: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."

■ The Fourteenth Amendment renders legislatures of the states "as incompetent as Congress to enact such laws" as denied to Congress by the First Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

■ Nearly a century ago the Supreme Court of the United States held that by the First Amendment ". . . Congress was deprived of all legislative power over mere *opinion,* but was left free to reach *actions* which were in violation of social duties or subversive of good order." (Emphasis added). *Reynolds v. United States,* 98 U.S. 145, 164, 25 L.Ed. 244 (1878). The Supreme Court in 1940 broadened the distinction between legislative control of *opinion* and regulation of *action.* In *Cantwell v. Connecticut, supra,* the Court characterized the First Amendment as embracing "two concepts— freedom to believe and freedom to act." The Court continued, "The first is absolute but, in the nature of things, the second cannot be. *Conduct remains subject to regulation for the protection of society."* (310 U.S. 303, 304, 60 S.Ct. 903). (Emphasis added).

The purported conflict between parental control over children based upon religious belief and state child labor laws regulating child labor was the issue resolved by the Supreme Court in *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). There the attack on child labor laws was in behalf of a Jehovah's Witness, a girl aged nine years, who believed it her religious duty to perform work in contravention of the child labor laws and that failure to perform her work would bring to her condemnation "to everlasting destruction at Armageddon."

The Court examined at length the state's interest in protecting children, even when laws, enacted to achieve this goal, were in conflict with the religious belief of the parents. In balancing these opposing interests, the Court made clear that ". . . the *family itself is not beyond regulation in the public interest . . . and neither rights of religion nor rights of parenthood are beyond limitation."* The Court declared that the state's ". . . authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience." 321 U.S. 166, 64 S.Ct. 442. In summary, the Court added ". . . the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare; and that . . . includes, to some extent, matters of conscience and religious conviction." 321 U.S. 167, 64 S.Ct. 442.

■ We conclude that although Oxford claims the Child Care Licensing Act violates the free exercise of religion, it is reasonable to find that regulation of the child care homes subject to the Act in no way abridges the absolute freedom of religious belief, but that the Act is a regulation of conduct. We hold that the Act being a regulation only of conduct, the law's purpose and effect are to advance the valid secular goals of the state.

Oxford further challenges the Child Care Licensing Act as an unconstitutional attempt by the Legislature to delegate its law making power to the Department of Public Welfare. Section 5 empowers the department to ". . . promulgate reasonable rules and regulations to carry out the provisions of this Act" and provides specified areas in which the Department may prescribe minimum standards for safety, facilities, health, comfort, and supervision within the child care homes. Sections 23 and 24 prescribe civil and criminal penalties for violations.

The Constitution of Texas expressly provides for separation of powers of the legislative, executive, and judicial branches of government and disallows exercise of the powers of one branch by another, except in instances expressly permitted by the Constitution. (Art. II, sec. 1). This fundamental principle has been carried forward to the present Constitution from its inclusion in the Constitution of the Republic of Texas, adopted in 1836.

It is settled that generally legislative delegation of authority to make rules and regulations must fix standards in order to be valid. *Housing Authority of City of Dallas v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79 (1940), 130 A.L.R. 1053; *Southwestern Savings and Loan Association of Houston v. Falkner,* 160 Tex. 417, 331 S.W.2d 917, 921 (1960). The standards set up by the Legislature may be broad where conditions must be considered which cannot conveniently be investigated by the legislative branch. *Housing Authority v. Higginbotham, supra,* 143 S.W.2d 87.

It is also clear that the Legislature may properly delegate to an administrative agency authority to establish rules and regulations, or minimum standards, which reasonably carry out the expressed purpose of the statutory law in question. *Beall Medical Surgical Clinic and Hospital v. Texas State Board of Health,* 364 S.W.2d 755, 757 (Tex.Civ.App. Dallas 1963, no writ) citing *Higginbotham, supra,* and *Falkner, supra; Williams v. State,* 514 S.W.2d 772, 774 (Tex. Civ.App. Beaumont 1974, writ ref'd n.r.e.).

The Court in *Williams v. State, supra,* met the contention that an invalid delegation of legislative authority had been attempted in the Texas Water Well Drillers Act (Art. 7621e, V.A.C.S.) with a review of existing case law and examination of various sections of the Act, reaching the conclusion that the Act was sufficiently complete and comprehensive in itself and did no more than delegate to the administrative agency ". . . authority to establish rules, regulations, and minimum standards to reasonably carry out the expressed purpose of the Act." (514 S.W.2d 776).

Section 5(a) of the Child Care Licensing Act is similar to Section 7(a) of the Water Well Drillers Act under consideration in *Williams v. State.* In the Act under review here Section 5(a) is followed by sixteen guidelines more specific with respect to standards, as well as by definitive sections on immunization of children, inspection of child care homes, and licensing, thereby overcoming any doubt implying vagueness or generality in the Act. The Court of Criminal Appeals approved a similar delegation of authority by the Legislature to the Department of Public Safety in 1969. (Art. 6701c–3, secs. 2, 7, V.A.C.S.). *Ex parte Smith,* 441 S.W.2d 544 (Tex.Cr.App. 1969).

We hold that the Legislature did not go beyond its recognized constitutional right to delegate to an administrative agency authority to establish rules, regulations, and minimum standards reasonably to carry out the expressed purposes of the Act which are to guard and protect the health, safety, and well-being of children of the state who reside in child care facilities.

In ordering dismissal of Oxford's suit, the trial court held that the Act ". . . is constitutional, and . . . this suit is, accordingly, a suit against the State of Texas to which the State has not consented." The applicable rule of law is firmly established that acts of officials of the state which are not *lawfully authorized* are not acts of the State, and an action against the officials, by one whose rights have been invaded or violated by such acts and who seeks determination or protection of such rights, is not a suit against the State within the rule of immunity of the State from suit. (Emphasis added). *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945); *W. D. Haden Company v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838, 840 (1958).

But, as in the present case, where the purpose of the suit against officials of the State is to control action of the State, or subject it to liability, is a suit brought against the State and is not maintainable

without express consent of the Legislature. *Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151 (1960), and cases there cited; *Sheffield v. Briscoe,* 550 S.W.2d 160 (Tex.Civ.App. Austin 1977, writ ref'd n.r.e.).

The Legislative Act under which the officials are acting is valid and constitutional law, as against attacks made by this lawsuit. It follows that this suit is one to control action of State officials and constitutes an action against the State itself. The trial court correctly found the Act constitutional and properly dismissed the suit.

The judgment of the trial court is affirmed.