The STATE of Texas, Petitioner,

v.

CORPUS CHRISTI PEOPLE'S BAPTIST CHURCH, INC. et al., Respondents.

No. C–3265.

Supreme Court of Texas.

Dec. 19, 1984.

Rehearing Denied Feb. 13, 1985.

Jim Mattox, Atty. Gen., Mary F. Keller, Asst. Atty. Gen., Austin, for petitioner.

Coover & Coover, Ann E. Coover, Corpus Christi, Ball & Skelly, William B. Ball, Harrisburg, Pa., for respondents.

POPE, Chief Justice.

The State of Texas sued Corpus Christi People's Baptist Church (People's Baptist) seeking to enjoin it from operating the Rebekah Home for Girls, the Anchor Home for Boys, and the Lighthouse Home for Boys, unless and until People's Baptist obtains a license for that purpose from the Department of Human Resources (DHR). Some members of the staff of the homes,

some children and parents have intervened as defendants. The questions presented for review are whether the state licensing procedure for child-care facilities violates the Religion Clauses of the United States Constitution's First Amendment, the Ninth Amendment, 42 U.S.C. 1983, and various articles of the Texas Constitution when applied to church-operated facilities. The trial court, in a non-jury trial, denied the State's prayer for injunction, concluding that the licensing scheme, as applied to People's Baptist, violated both the United States and Texas Constitutions. The court of appeals, with one justice dissenting, affirmed the judgment in an unpublished opinion. We reverse the judgments of the courts below and remand the cause to the trial court with instructions.

The issue is not whether People's Baptist is performing a service that falls beneath licensing standards. The three homes have a good record of high quality service. People's Baptist, from this record, could no doubt easily satisfy licensing requirements, but has chosen not to do so. It reasons that licensing interferes with religious freedom. People's Baptist does not, however, resist all licensing to do business in Texas. In fact, it does its business and service as a corporation under the corporate name of Corpus Christi People's Baptist Church, Inc., and it complies with all business licensing requirements.

The issue, therefore, is a narrow one. It is one that Texas courts have twice before decided adversely to People's Baptist or its predecessor in title. *Roloff Evangelistic Enterprises, Inc. v. State,* 556 S.W.2d 856 (Tex.Civ.App.—Austin 1977, writ ref'd n.r. e.), *appeal dismissed,* 439 U.S. 803, 99 S.Ct. 58, 58 L.Ed.2d 96 (1978); *Oxford v. Hill,* 558 S.W.2d 557 (Tex.Civ.App.—Austin 1977, writ ref'd). In *Roloff,* the court rejected the argument that the licensing act impinged on the corporation's free exercise of religion. In *Oxford,* the court refused to sustain an employee's contention that the Act violated his First Amendment rights. This third effort to achieve a different result was occasioned by a transfer of ownership of the homes to Corpus

Christi People's Baptist Church, Inc. by the former owner, Roloff Evangelistic Enterprises, Inc. Reverend Lester Roloff forthrightly explained the reason for the transfer to the corporate church: "Instead of (the State) jumping on the (Evangelistic) Enterprises, you will be fighting with the church from here on . . . ." We have substantially the same cause before us again, prompted only by a change of ownership.

The licensing of child-care facilities operating in Texas is required as a part of the state program to protect the health, safety and well-being of children residing in those facilities. The declared purpose of the licensing requirement is to establish state-wide minimum standards through a licensing program. TEX.HUM.RES.CODE ANN. § 42.001. The licensing act includes this statement:

> It is also the intent of the legislature that freedom of religion of all citizens is inviolate, and nothing in this chapter gives a governmental agency authority to regulate, control, supervise, or in any way be involved in the form, manner, or content of religious instruction or the curriculum of a school sponsored by a religious organization.

*Id.*

People's Baptist contends that the Texas licensing scheme violates the Establishment Clause of the United States Constitution's First Amendment because it creates "excessive entanglement" between church and state. The Clause provides: "Congress shall make no law respecting an establishment of religion . . . .".

■■■ The U.S. Supreme Court has enunciated a three-pronged test to determine whether governmental action violates the Establishment Clause: (1) the statute must have a secular legislative purpose; (2) the statute's principal or primary effect must be one that neither advances nor inhibits religion; and (3) the statute must not foster excessive governmental entanglement with religion. *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The purpose of the

Establishment Clause is to protect against state "sponsorship, financial support, and active involvement" in religious activity. *Walz v. Tax Commission*, 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970).

People's Baptist's reliance on the Establishment Clause is misplaced. The Establishment Clause cases address the issue of whether some form of government *aid,* either direct or indirect, to a religious institution violates the Establishment Clause. *See e.g., Mueller v. Allen,* 463 U.S. 388, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983) (statute allowing parents tax deduction for expenses incurred in sending their children to parochial schools); *Lemon* (statute providing state aid in form of salary supplements, textbooks and instructional material for nonsectarian subjects); *Walz* (statute granting property tax exemptions to religious organizations for religious properties).

Unlike the traditional Establishment Clause cases, this case involves government *regulation* of a child-care institution which is part of the church ministry. This distinction is important for two reasons. First, to accept People's Baptist's argument and invalidate the licensing and regulatory scheme because of "excessive entanglements" would create a dilemma in applying the three-pronged Establishment Clause test; the second prong would be at odds with the third. Requiring nonreligious childcare facilities to comply with the state licensing and regulatory scheme while exempting religious facilities would result in unequal state treatment of the two classes of institutions. This unequal treatment could, arguably, be impermissible under the second-prong of the Establishment Clause test because the primary effect would be to advance religion.

Second, state licensing and regulation is a type of entanglement that differs from the entanglement discussed in the traditional Establishment Clause cases. In those cases, the State must examine and determine what programs are religious and what programs are secular to ensure that

government aid reaches only the nonreligious ones. In our case, the state regulatory scheme prohibits inquiry into the religious content of the homes' curriculum. The purpose of these regulations is to assure that all child-care facilities, secular and nonsecular, meet certain minimum standards in areas such as financial solvency, staff-child ratio, nutrition and medical care.

We hold that the licensing requirement does not offend the Establishment Clause. A more appropriate and direct means of questioning the constitutionality of this government regulation is through the First Amendment's other religion clause, the Free Exercise Clause. *See Forest Hills Early Learning Center, Inc. v. Lukhard,* 728 F.2d 230, 238 n. 6 (1984). The Free Exercise test contains all of the safeguards required to protect People's Baptist's interest without the inherent traps found in an Establishment Clause review of a case like this where the government imposes regulations without conferring corresponding benefits. Under a Free Exercise Clause analysis, the problem of "excessive entanglement" between church and state will, in effect, be addressed. If government regulation is proper because the State has a compelling interest, the regulatory scheme will nevertheless be invalid unless the State uses the least restrictive means. Anything more than the least restrictive means will result in an "excessive entanglement."

The First Amendment's Free Exercise Clause provides that Congress shall make no law "prohibiting the free exercise" of religion. The State contends that licensing of the child-care facilities does not violate People's Baptist's right to the free exercise of its religion. We agree.

While there is an unqualified prohibition against government interference with beliefs, governmental regulation may lawfully impose an incidental burden on otherwise protected religious conduct. *Wisconsin v. Yoder,* 406 U.S. 205, 220, 92 S.Ct. 1526, 1535, 32 L.Ed.2d 15 (1972);

*Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963); *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). A balancing test is employed by the courts to determine when government may regulate certain conduct prompted by religious beliefs or principles. *Yoder,* 406 U.S. at 221, 92 S.Ct. at 1536; *Sherbert,* 374 U.S. at 403, 406, 83 S.Ct. at 1793, 1795. First, the party complaining of a Free Exercise Clause violation must show that the regulations under review impose a substantial burden on the exercise of his religion. Second, if the complaining party demonstrates that it is burdened by the regulations, then the State must have a compelling state purpose for the laws. Relevant to this prong of the test is an inquiry into whether there exists a less restrictive alternative to the regulation.

■ The trial court based its judgment, in part, on the State's failure to prove a compelling interest. We hold that, as a matter of law, the State has a compelling interest of the highest order in protecting the children in child-care facilities from physical and mental harm. This compelling State interest outweighs the burden imposed upon People's Baptist by the licensing requirements.

■ The State has a right and a duty to protect and nurture its minor children. *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Jones v. Alexander,* 122 Tex. 328, 59 S.W.2d 1080 (1933). The State must be especially concerned with the welfare of children residing in child-care facilities. The parents of these children are absent. The children who reside in these homes are entirely dependent upon the operators and employees for their food, shelter and care. Communication with those outside the facility is wholly controlled by the institution. The staff at the homes exercise total supervision over the children's health, safety and well-being. They direct even the smallest details of the children's daily lives.

The State's special concern for the welfare of these children is reflected in the Human Resources Code. The State's interest in assuring that these children's basic needs are met and that their basic rights are protected is paramount. *Oxford v. Hill,* 558 S.W.2d 557 (Tex.Civ.App.—Austin 1977, writ ref'd); *Kansas ex rel. O'Sullivan v. Heart Ministries, Inc.,* 227 Kan. 244, 607 P.2d 1102 (1980), *appeal dismissed,* 449 U.S. 802, 101 S.Ct. 47, 66 L.Ed.2d 6 (1980).

The record reveals that People's Baptist has provided excellent physical facilities, a dedicated staff and a list of many children who have been successfully treated by its programs. These facts show how readily the homes can be approved for licensing. If the State is prohibited from licensing these child-care facilities on religious grounds, it will be prohibited from licensing other facilities claiming the same religious exemption. Children in the homes of some institutions may become the victims of neglect, injury, cruelty, or degradation in the name of spiritual regeneration. The State would, under People's Baptist's theory, be powerless to intervene.

Licensing and regulation of child-care facilities are the least restrictive of the alternatives that the State could provide for the protection of children. Without these procedures the State could not gather vital information about a child-care facility that it must have to fulfill its duty to protect the health and well-being of the children residing there. No entity other than the State can carry out these responsibilities for the public.

■ The Human Resources Code protects religious child-care facilities from State intrusion into protected areas. Section 42.001 expresses the intent of the legislature that freedom of religion is inviolate. Section 42.042(k) prohibits the DHR from regulating or attempting to regulate or control "the content or method of any instruction or curriculum of a school sponsored by a religious organization." The regulations provide the least restrictive means of achieving the State's compelling interest in promoting the health, safety and

welfare of the children residing in child-care facilities.

We have considered all of People's Baptist's remaining arguments: that state licensing and regulation of these homes would violate the Ninth Amendment of the U.S. Constitution; 42 U.S.C. 1983; article I, sections 3a, 6 and 19; article II, section 1; and article III, section 1 of the Texas Constitution. We conclude that the State's regulatory scheme does not violate these provisions. Based on the foregoing holdings, we need not reach the State's third point of error.

These cases have been debated and litigated for a number of years upon the claim that the State seeks to regulate religion. This record and those of the two prior cases show that the issue is a spurious one. The State has manifested complete disinterest in the religious doctrines that People's Baptist has in the past or may in the future expound. The homes can comply with the law's modest requirements that are mandatory for all other homes. A decision to close the homes will be that of People's Baptist, not the State.

We reverse the judgments of the courts below and remand the cause to the trial court with instructions to enjoin People's Baptist from operating these homes unless and until such time as it procures a license from the State.