OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



March 21, 2000

The Honorable Cindy Maria Garner                    Opinion No. JC-0200
349th Judicial District Attorney
P.O. Box 1076                                        Re:   Whether chapter 110 of the Civil Practice
Crockett, Texas 75835                                and Remedies Code exempts a religious post-
                                                     secondary educational institution from regulation
                                                     by the Higher Education Coordinating Board
                                                     (RQ-0134-JC)

Dear Ms. Garner:

You ask whether chapter 110 of the Civil Practice and Remedies Code, which protects religious freedom, permits a religious organization to operate a degree-awarding university free of state regulation under chapter 61, subchapter G of the Education Code. A definitive answer to your question would require the investigation and resolution of fact questions, which cannot be accomplished in the opinion process. We find, however, that the application to religious educational institutions of state laws regulating the awarding of degrees does not, as a general matter, violate the law restricting governmental burdens on the free exercise of religion.

You inform us that a nonprofit religious organization, the Therapon Institute, Inc., plans to do business in Houston County, Texas, as Therapon University for the purpose of educating, training, certifying and awarding degrees and credentials to ministers, missionaries, counselors and nonprofessional adherents to its religious belief system. Letter from Honorable Cindy Maria Garner, District Attorney for 349 Judicial District, to Honorable John Cornyn, Texas Attorney General (Oct. 26, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. The Christian Bible will serve as the only textbook. *Id.* You wish to know whether chapter 110 of the Civil Practice and Remedies Code would enable the Therapon Institute to "provide a non-academic degree curricula in Biblical Counseling and Biblical Studies, restricted to the sole purpose of ministerial and religious training, and bestow degrees upon those participants who satisfactorily compete their course of study" without being subject to regulation as a private postsecondary educational institution pursuant to chapter 61, subchapter G of the Education Code. *Id.* at 2 (emphasis in original).

Chapter 110 of the Civil Practice and Remedies Code was modeled on the federal Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb-2000bb-4 (1994) ("the RFRA"). Congress enacted the RFRA in response to the United States Supreme Court's interpretation in *Employment Division v. Smith*, 494 U.S. 872 (1990), of the First Amendment ban on federal and state laws that prohibit the free exercise of religion. U.S. CONST. amend. I (Congress shall make no law respecting

an establishment of religion, or prohibiting the free exercise thereof); *see Cantwell v. Connecticut*, 310 U.S. 296 (1940). In *Smith*, "the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion." 42 U.S.C. § 2000bb(a)(4) (1994). Prior to the *Smith* decision, courts had required the government to show a compelling interest for a law that burdened rights protected by the free exercise clause. *See id.* § 2000bb(b)(1). One purpose of RFRA was "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and to guarantee its application in all cases where free exercise of religion is substantially burdened." *Id.* § 2000bb(b)(1).

The United States Supreme court declared the RFRA inapplicable to states in *City of Boerne v. Flores*, 521 U.S. 507 (1997). *See* HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. S.B. 138, 76th Leg., R.S. 2, 5 (May 17, 1999). Chapter 110 was intended to provide essentially the same protections as the federal law had provided. TEX. CIV. PRAC. & REM. CODE ANN. § 110.001(a)(1) (Vernon Supp. 2000). It protects the "free exercise of religion," defined as an act or refusal to act that is substantially motivated by sincere religious belief, and provides that a government agency may not substantially burden a person's free exercise of religion, unless the agency demonstrates the application of the burden to the person "is in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that interest." *Id.* §§ 110.001(a)(1), .003. A person who successfully asserts a claim or defense under chapter 110 is entitled to declaratory and injunctive relief, compensatory damages, and reasonable attorney's fees, court costs, and other reasonable expenses incurred in bringing the action. *Id.* § 110.005; *see id.* § 110.004 (person may assert violation of right to free exercise of religion as defense in judicial or administrative proceeding). In determining whether an interest is a compelling governmental interest under section 110.003, courts are to give weight to the interpretation of compelling interest in federal case law relating to the free exercise of religion clause of the First Amendment of the United States Constitution. *Id.* § 110.001(b). Chapter 110 applies to each state law, "unless the law is expressly made exempt from the application of this chapter by reference to this chapter." *Id.* § 110.002(c). Chapter 61, subchapter G of the Education Code is not expressly exempt from chapter 110.

Subchapter G of chapter 61, Education Code, provides for regulation of private postsecondary educational institutions. *See* TEX. EDUC. CODE ANN. § 61.302(2) (Vernon 1996 & Supp. 2000) (defining "private postsecondary educational institution"). Its purpose is to prevent deception of the public "resulting from the conferring and use of fraudulent or substandard college and university degrees" and to "regulate the use of academic terminology in naming or otherwise designating educational institutions." *Id.* § 61.301 (Vernon 1996). The purpose clause finds that degrees and equivalent indicators of educational attainment are widely relied upon to judge the competence of persons engaged in numerous activities necessary to the general welfare and that it is in the public interest to regulate them. It also finds it in the public interest to protect legitimate institutions and persons holding degrees from them. *Id.*

Unless a private postsecondary educational institution holds a certificate of authority from the Texas Higher Education Coordinating Board (the "Coordinating Board"), it may not "use the

term 'college,' 'university,' 'seminary,' 'school of medicine,' . . . or 'law center' in the official name or title" of the institution, nor may it describe the institution by one of the enumerated terms or a term having a similar meaning. *Id.* § 61.313(a). The use of the term "university" in the official name of the proposed private postsecondary educational institution would bring the Therapon University within the provisions of subchapter G. To receive a certificate of authority to grant a degree and to enroll students for courses that may be applicable toward a degree, the institution must meet the certification standards established by the Coordinating Board. The Board has adopted detailed standards for certification, among them standards for faculty qualifications, faculty size, curriculum, and record-keeping. 19 TEX. ADMIN. CODE § 5.214 (1998), *amended by* 24 Tex. Reg. 12062 (Dec. 31, 1999).

While there are exemptions from subchapter G and from the prohibition on using terms such as "college" or "university" in the institution's name, none of these apply to the contemplated Therapon University. *See* TEX. EDUC. CODE ANN. §§ 61.303 (Vernon Supp. 2000) (exemption for institution that is fully accredited by a recognized accrediting agency or an institution or degree program that has been approved by a state agency authorizing the institution's graduates to take a professional or vocational state licensing exam); 61.313(e) (exemptions for certain institutions established before September 1, 1975).

A person may not grant a degree on behalf of a private postsecondary education institution unless the Coordinating Board has issued the institution a certificate of authority to grant the degree. *Id.* § 61.304. A "degree" is defined as

> any title or designation, mark, abbreviation, appellation, or series of letters or words, including associate, bachelor's, master's, doctor's, and their equivalents, which signifies, purports to, or is generally taken to signify satisfactory completion of the requirements of all or part of a program of study leading to an associate, bachelor's, master's, or doctor's degree or its equivalent.

*Id.* § 61.302(1) (Vernon Supp. 2000); *see also* IV OXFORD ENGLISH DICTIONARY 148-49 (2d 1989) ("degree" is "[a]n academical rank or distinction conferred by a university or college as a mark of proficiency in scholarship"). The requestor has informed us that the Therapon Institute wishes to award "degrees and credentials" to ministers, missionaries, counselors, and others, and to "provide a non-academic degree curricula in Biblical Counseling and Biblical Studies." Request Letter, *supra*, at 2. We cannot determine as a matter of law whether the "degree" that the Therapon Institute wishes to award would signify, purport to signify, or be generally taken to signify "satisfactory completion of the requirements of all or part of a program of study leading to an associate, bachelor's, master's or doctor's degree or its equivalent." If the proposed degree is within the statutory definition, the Therapon Institute could not grant it without holding a certificate of authority granted by the Coordinating Board.

If awarding degrees and using the term "university" are not of particular importance to the Therapon Institute, it should be able to provide instruction in the Bible without being subject to regulation under subchapter G of chapter 61, Education Code. In this case, representatives of the Therapon Institute should contact the Coordinating Board about modes of operating that would not be subject to state regulation, and it would not be necessary to consider the effect of chapter 110 of the Civil Practice and Remedies Code. Because you expressly ask about chapter 110, we will consider whether it would exempt the proposed Therapon University from regulation by the Coordinating Board as a private postsecondary educational institution.

If any person "substantially motivated by sincere religious belief" shows that regulation of the proposed Therapon University would substantially burden his or her free exercise of religion, chapter 110 of the Civil Practice and Remedies Code requires the court to determine whether the burden "is in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that interest." TEX. CIV. PRAC. & REM. CODE ANN. § 110.003 (Vernon Supp. 2000). The free exercise clause protects the freedom to believe and the freedom to act. While the freedom to believe is absolute, the freedom to act is limited. *Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972); *North Valley Baptist Church v. McMahon*, 696 F. Supp. 518, 524 (E.D. Cal. 1988), *aff'd*, 893 F.2d 1139 (9th Cir. 1990), *cert. denied*, 496 U.S. 937 (1990). A "substantial burden" is placed on a person's free exercise of religion if a governmental regulation forces a person to choose between following the precepts of his religion and forfeiting government benefits on the one hand, and abandoning his religious precepts in order to accept the benefits on the other hand. *See Sherbert v. Verner*, 374 U.S. 398, 404 (1963) (where a person's religion prohibited her from working on Saturdays, state may not deny her unemployment benefits for refusal to accept job that required Saturday work). Even facially neutral legislation may give rise to a burden on religion if, as applied to a particular religious sect, it forces individuals to choose between abandoning their religious beliefs or sacrificing an important government benefit. *Thomas v. Review Bd. Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (free exercise clause was violated by state law denying unemployment compensation to an individual who refused on religious grounds to accept work building weapons). The state-granted privilege of operating a school has been held to be a government benefit for purposes of the free exercise clause. *North Valley Baptist Church*, 696 F. Supp. at 525.

In *New Jersey State Board of Higher Education v. Board of Directors of Shelton College*, 448 A.2d 988 (N.J. 1982), a religious educational institution argued that because the Bible commands the separation of church and state, the institution was prohibited by its beliefs from submitting to licensure by the state. *Shelton College*, 448 A.2d at 993-94. The court found that the state licensing statutes required the college to choose between a religious tenet and the privilege of conferring baccalaureate degrees, and thus imposed at least some burden on the exercise of religion. *Id.* at 994. Other courts have found that state regulation of religious schools has burdened the free exercise of religion. *See also Fellowship Baptist Church v. Benton*, 620 F. Supp. 308, 313 (S.D. Iowa 1985), *aff'd in part, rev'd in part on other grounds*, 815 F.2d 485 (8th Cir. 1987) (state regulation requiring the certification of teachers burdened the free exercise of religion because it required church adherents to violate the belief in the "headship of Christ"); *State v. Rivinius*, 328

N.W.2d 220, 227 (N.D. 1982), *cert. denied,* 460 U.S. 1070 (1983) (teacher certification requirement imposed, "to a degree," a burden on the religious beliefs of a Christian academy).

We cannot determine whether or not a court would find that applying chapter 61, subchapter G, of the Education Code and the related regulations to the proposed Therapon University would burden any person's free exercise of religion. Persons asserting that their religious freedom is violated would have to show how the law and regulations operated against them in the practice of their religion. *Abington Sch. Dist v. Schempp,* 374 U.S. 203, 223 (1963); *see State v. Clarksville Sch. of Theology,* 636 S.W.2d 706, 709 (Tenn. 1982) (no evidence offered that anyone's religious beliefs required operation of Clarksville School of Theology). However, even if state regulation of the proposed Therapon University would be a substantial burden on the free exercise of religion, chapter 110 of the Civil Practice and Remedies Code will not be violated if the state shows that the regulation is in furtherance of a "compelling governmental interest" and is the least restrictive means of furthering that interest. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 110.003(b) (Vernon Supp. 2000); *see also Yoder,* 406 U.S. at 221 (courts balanced the competing religious and legislative interests to determine whether legislation violated the free exercise clause).

The New Jersey Supreme Court determined that the application of state licensing statutes to a sectarian college whose religious doctrine precluded state licensure did not violate the First Amendment. *Shelton College,* 448 A.2d at 988. The court pointed out that not all burdens on religion are unconstitutional, and legislation that impedes the exercise of religion may be constitutional if there exists no less restrictive means of achieving some overriding state interest. *Id.* at 994 (citing *United States v. Lee,* 455 U.S. 252 (1982); *Prince v. Massachusetts,* 321 U.S. 158 (1944)). "The legislation at issue here advances the State's interest in ensuring educational standards and maintaining the integrity of the baccalaureate degree." *Id.* at 995. The licensing requirement preserved the public's trust in the significance of an academic degree and protected students from substandard education. *Id.* at 996. It "is now beyond question," the court said, that maintenance of minimum educational standards in all schools constitutes a substantial state interest. *Id.* at 996 (citing *Wisconsin v. Yoder,* 406 U.S. 205 (1972); *Lemon v. Kurtzman,* 403 U.S. 602 (1971); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925)). Thus, the state had an overriding interest in regulating the religious college. *Shelton College,* 448 A.2d at 997. Other courts have also concluded that the state had a compelling interest in applying its licensing requirements to religious schools. *See North Valley Baptist Church,* 696 F. Supp. at 530 (application of state day-care facility licensing provisions to church preschool did not violate free exercise clause); *Fellowship Baptist Church,* 620 F. Supp. at 316 (application of state reporting requirements and teacher certification requirements to religious school did not violate free exercise clause); *State v. Rivinius,* 328 N.W.2d at 231 (application of teacher certification requirement to Christian academy did not violate free exercise clause).

We believe that a court would hold that Texas has a compelling state interest in regulating the use of the term "university" and the award of academic degrees by educational entities. These interests are well described in chapter 61, subchapter G's statement of purpose: "to prevent deception of the public resulting from the conferring and use of fraudulent or substandard college and university degrees" and "to regulate the use of academic terminology in naming or otherwise

designating educational institutions." TEX. EDUC. CODE. ANN. § 61.301 (Vernon 1996). Regulation of the evidences of college and university educational attainment is in the public interest, because they are used by employers, professional groups, and the general public to judge the competence of persons engaged in a wide range of activities. *Id.* Accordingly, we believe a court would find that any burden state regulation might have on the free exercise of a person's religion is outweighed by the state's interest in uniform regulation of the awarding of degrees by postsecondary educational institutions.

Not only must regulation under chapter 61 of the Education Code serve a compelling governmental interest, it must do so by the "least restrictive means." TEX. CIV. PRAC. & REM. CODE ANN. § 110.003 (Vernon Supp. 2000). Where a person seeks a complete exemption from the application of a particular state regulation, courts have found that a regulatory method is the least restrictive means of achieving a compelling state interest if granting an exemption would significantly hinder attainment of the state interest. *See United States v. Lee*, 455 U.S. 252, 259-60 (1982); *Shelton College*, 448 A.2d at 996; *State v. Corpus Christi People's Baptist Church, Inc.*, 683 S.W.2d 692, 696 (Tex. 1985) (state's compelling interest in protecting children in childcare facilities outweighs burden imposed on church by licensing requirements).

We assume for purposes of this opinion that the Therapon Institute would seek a complete exemption from the state licensing requirements for degree-granting institutions. You tell us that Therapon wishes to award "degrees" based on a "non-academic" curriculum centered on the Christian Bible. If exempted from state standards for the award of degrees, holders of Therapon "degrees" would have the same outward credentials as degree-holders of certified institutions, but would not have met the same minimum educational standards. This result clearly would undermine the purpose of the state certification laws, which are designed to create a standard of education on which the public may rely with confidence. The Supreme Court of New Jersey rejected an exemption from regulation for a religious college on the same grounds:

> [A]ccommodation of defendants' religious beliefs would entail a complete exemption from state regulation. . . . [S]uch accommodation would cut to the heart of the legislation and severely impede the achievement of important state goals. Furthermore, if an exemption were created here, Shelton College would receive an advantage at the expense of those educational institutions that have submitted to state regulation. Such a development would undermine the integrity of the baccalaureate degree, erode respect for the state higher education scheme, and encourage others to seek exemptions. Thus, the uniform application of these licensing requirements is essential to the achievement of the State's interests.

*Shelton College*, 448 A.2d at 996.

Accordingly, we believe a court would conclude that chapter 61, subchapter G of the Education Code, and the regulations adopted thereunder by the Coordinating Board, as a general matter are the least restrictive means of achieving the state's interest in maintaining the integrity of the postsecondary degrees and protecting its citizens from fraud and misleading representations. In conclusion, we believe that the courts would find that chapter 110 of the Civil Practice and Remedies Code would not exempt a religious university that grants degrees from regulation as a private postsecondary educational institution pursuant to chapter 61, subchapter G of the Education Code.

## S U M M A R Y

Chapter 110 of the Civil Practice and Remedies Code provides that a governmental agency may not substantially burden a person's free exercise of religion, unless the agency demonstrates that the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. Although state regulation of a religious university that grants degrees as a private postsecondary educational institution might substantially burden some person's free exercise of religion, chapter 110 does not exempt the religious university from such regulation.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee