TEXAS WORKERS' COMPENSATION
COMMISSION, Appellant,

v.

Stan HORTON and Ricky Day
Trucking, Appellees.

No. 09–05–177 CV.

Court of Appeals of Texas,
Beaumont.

March 9, 2006.

283

Greg Abbott, Atty. Gen., Brenda E. Brockner, Don Walker, Asst. Attys. Gen., Austin, for appellant.

J. Kevin Dutton, Jasper, Stephen C. Mahaffey, Carthage, for appellees.

Before McKEITHEN, C.J., KREGER, and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This is an appeal from an order granting a temporary injunction requiring the Texas Workers' Compensation Commission ("TWCC") to reinstate Dr. Merrimon Baker to its list of approved physicians. The

TWCC asserts its statutory right to appeal from orders granting temporary injunctions. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (Vernon Supp.2005).

Stan Horton, a resident of Jasper County, Texas, sued his employer's compensation carrier. Horton alleges he injured his back in the course and scope of his employment with a subscriber under Texas's workers' compensation laws. *See* Tex. Lab.Code Ann. §§ 408.001–418.002 (Vernon 1996 & Supp.2005). Following Horton's on-the-job back injury, Dr. Merrimon Baker treated Horton. During Horton's treatment, the TWCC revoked Dr. Baker's status as a physician approved to treat compensation claimants. As a result, the TWCC refused to continue to pay for Horton's treatment by Dr. Baker and Horton filed suit.

In his pleadings, Horton sought a temporary injunction to prohibit the TWCC from "refusing to authorize[ ] payment for Dr. Baker's medical care." In the alternative, Horton sought to recover "a judgment for money damages." Horton also asserted in his petition that no other physicians were available in Jasper County to treat him for his injuries, and that his injuries required surgery. According to Horton, no local physicians on the TWCC's list of approved physicians perform spine surgery at hospitals in Jasper County, Texas. Thus, he maintained he has no adequate remedy and suffers irreparable injury because the TWCC removed Dr. Baker from its list of approved physicians.

On April 15, 2005, the TWCC filed an answer and motion to transfer venue. The TWCC did not file a plea to the jurisdiction. On April 20, 2005, five days after the TWCC filed its answer, the district court held an evidentiary hearing on Horton's request for a temporary injunction. Horton did not appear or testify at the hearing.

On May 3, 2005, the court granted the temporary injunction resolving the disputed issues in Horton's favor. In its order, the trial court found that (1) Horton would probably prevail on the trial of his cause; (2) the TWCC had removed the only local physician available to treat Horton's injuries from its list of approved physicians; (3) the TWCC's action altered the status quo and made "ineffectual a judgment in favor of [Horton] in that [Horton] will be faced with an inadequate level of care for [his] injuries . . ."; and (4) unless the court restrains the TWCC, Horton will have no adequate remedy at law because "he will suffer substantial ongoing pain that significantly interferes with normal life activities. . . ." The district court ordered the TWCC to reinstate Dr. Baker as an approved physician to treat workers' compensation patients for their injuries within his area of specialty.

The TWCC raises six appellate issues, which include its challenges to the trial court's jurisdiction to order the TWCC to reinstate Dr. Baker as an approved physician. Based on the pleadings and record before it, we agree that the trial court acted without jurisdiction in granting the request for a temporary injunction. Accordingly, we reverse the trial court's order granting a temporary injunction.

### Standard of Review

The TWCC argues that the trial court acted without subject matter jurisdiction because the agency is immune from suit. "Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction." *State ex rel. State Dep't of Highways & Public Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex.2002). "Whether a trial court has subject matter jurisdiction is a legal question that we review de novo." *Id.*

■ In evaluating whether a plaintiff has proved a court's jurisdiction, we consider the facts alleged in the petition and any evidence submitted by the parties about jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex.2004). We construe the pleadings in the plaintiff's favor and do not weigh the merits of the plaintiff's claims. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). When the plaintiff's pleadings are insufficient to establish jurisdiction but are curable, the proper remedy is to allow the plaintiff an opportunity to amend. *Id.*

### Subject Matter Jurisdiction

We first address whether the trial court had subject matter jurisdiction over Horton's request for injunctive relief. The TWCC's first issue asserts that, absent statutory authorization or legislative consent, a sovereign is immune from a trial court's attempt to control a state official's exercise of discretion.

■ The TWCC is a state agency created by statute. *See* Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 1136 (amended 1995, 2005) (current version at Tex. Lab.Code Ann. § 402.001 (Vernon Supp.2005)).[1] "The general rule is that the State has sovereign immunity unless it has been waived. This immunity applies to both the State and its agencies...." *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex.2000) (citations omitted). "Sovereign immunity from suit defeats a trial court's subject matter jurisdiction...." *Miranda*, 133 S.W.3d at 225–226.

■ Although the TWCC did not file a plea to the jurisdiction and did not raise the issue of sovereign immunity in the trial court, Texas law allows a state agency to raise subject matter jurisdiction for the first time on appeal. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993). Thus, we will consider the TWCC's argument that it is immune from suit, even though it did not raise this argument in the trial court below.

■ Although not cited in Horton's pleadings, the Texas Constitution gives district courts the authority to issue injunctions. Tex. Const. art. V, § 8. Additionally, the legislature has granted jurisdiction over suits for injunctive relief to district and county courts. *See* Tex. Civ. Prac. & Rem.Code Ann. § 65.021 (Vernon 1997). Nevertheless, a suit brought "to control State actions or to subject the State to liability is not maintainable without legislative consent or statutory authorization." *Director of Dep't of Agric. & Env't v. Printing Indus. Assn. of Tex.*, 600 S.W.2d 264, 265 (Tex.1980).

■ At the same time, suits against state officials who have acted *unlawfully* or suits to *prevent the occurrence of an unlawful action* do not require legislative or statutory authorization. *Id.; Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525, 530 (Tex. 1963). Thus, a suit for injunctive relief against a state agency is maintainable only if the pleadings, together with the relevant evidence, show that the agency's activity is unlawful because it lacks statutory authorization. *Director of Dep't of Agric. & Env't*, 600 S.W.2d at 266; *Steele v. City of Houston*, 603 S.W.2d 786, 791–92 (Tex.

1. The TWCC was abolished as of September 1, 2005 and its functions were assumed by the division of workers compensation within the Texas Department of Insurance. See Tex. Lab.Code Ann. § 402.001 (Vernon Supp. 2005). Since the order at issue was entered prior to the reorganization, all references in this opinion are to the TWCC and the law existing prior to September 1, 2005.

1980). Additionally, a state agency can be enjoined if its actions violate the Constitution. *See id.* But here, Horton pleads no constitutional violation.

 When suing a state entity, the plaintiff bears the burden of proving that the court has subject matter jurisdiction. "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003). To decide whether Horton affirmatively proved the trial court's subject-matter jurisdiction over his request for injunctive relief, we consider the facts he alleged and the parties' evidence on jurisdiction. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001). In reviewing Horton's pleadings, we find nothing referring us to any authority showing the trial court had jurisdiction over his request to enjoin the TWCC.

Next, we review the relevant evidence from the hearing. Horton's first witness was a workers' compensation beneficiary, who also was Dr. Baker's patient. This witness indicated that he could not travel to see an out-of-town physician because of a combination of his injuries, his father's disabilities, and his inability to travel very far. This witness did not know Horton and was unaware of any problems between Dr. Baker and the TWCC. We find the testimony of this witness irrelevant to the jurisdictional issue.

Horton's attorney then called another workers' compensation beneficiary. The second witness said that no one had notified him that Dr. Baker could not treat him. This witness, who did not know Horton, further testified that he did not have adequate transportation to allow him to travel to Beaumont or Lufkin for medical treatment. We also find he testimony of

this witness irrelevant to the jurisdictional issue.

The administrator of the Dickerson Memorial Hospital also testified at the hearing. According to this witness, while two orthopedic surgeons practice in the Jasper area, only Dr. Baker accepts patients on workers' compensation benefits. The TWCC's attorney cross-examined the hospital administrator about: (1) his knowledge of Dr. Baker's malpractice claims; (2) two agreed orders of the State Board of Medical Examiners limiting Dr. Baker's medical privileges; (3) Dr. Baker's loss of patient-admission privileges at Cleveland Memorial Hospital; and (4) a lawsuit against a hospital for its allegedly negligent credentialing of Dr. Baker. We find the administrator's testimony irrelevant to the jurisdictional inquiry, namely whether the agency's denial of approved physician status to Dr. Baker was unconstitutional or unauthorized by statute.

Horton also called Dr. Baker to testify at the hearing. During Dr. Baker's examination, Horton's counsel introduced the TWCC's letter that explained the reasons it denied Dr. Baker's request to be placed on its approved doctor list. The TWCC's letter suggests the agency denied Dr. Baker's request for approved physician status because of violations of the Texas Medical Practice Act. The letter concludes, "Further, this correspondence shall constitute a Commission ORDER that you not provide health care to injured employees under the Texas Workers' Compensation Act other than emergency or immediate post-injury medical care."

Dr. Baker also expressed his opinion on Horton's medical treatment and the need for Horton to receive treatment in Jasper. Dr. Baker testified that Horton had a herniated disc in the neck and needed a medical test, referred to as a discogram, to determine whether he was a candidate for

surgery. Dr. Baker also addressed Horton's ability to travel to obtain treatment and testified that Horton would find driving more than twenty to thirty minutes to be difficult, if not impossible. Dr. Baker testified that the delay in medical treatment was causing injury to Horton, and that traveling long distances would aggravate Horton's condition. Dr. Baker testified that no other orthopedic surgeons in Jasper accepted compensation cases.

On cross-examination, Dr. Baker admitted that he did not know if a dispute existed between the compensation carrier and Horton regarding the relationship of the neck injury to Horton's on-the-job accident. Dr. Baker also testified that if there were no association between the neck injury and the compensation claim, he would not expect the compensation carrier to pay for the neck surgery.

We find much of Dr. Baker's testimony irrelevant to the jurisdictional inquiry. But, because Dr. Baker's testimony demonstrates a factual basis for the TWCC's exclusion of Dr. Baker from its list of approved doctors, some of Dr. Baker's testimony is relevant to our review of whether the trial court properly exercised subject matter jurisdiction in this case.

At the hearing, the TWCC offered into evidence the affidavit of a Benefit Review Officer. His affidavit, which the trial court admitted as evidence, indicates that Horton appeared at a December 10, 2004 benefit review conference, but then failed to appear at two subsequent benefit review conferences. Although the affidavit is relevant to the TWCC's exhaustion of remedies issue, we do not reach that issue in our resolution of this appeal.

To demonstrate the TWCC's legal authority to create a list of approved physicians, the TWCC's appellate brief directs us to section 408.023 of the Texas Labor Code. *See* Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 1.01, 2001 Tex. Gen. Laws 5168 (amended 2005) (current version at Tex. Lab.Code Ann. § 408.023 (Vernon Supp.2005)).[2] At the time of the hearing, this section directed the TWCC to "develop a list of doctors licensed in this state

2. Sec. 408.023. LIST OF APPROVED DOCTORS; DUTIES OF TREATING DOCTORS.

(a) The commission shall develop a list of doctors licensed in this state who are approved to provide health care services under this subtitle. Each doctor licensed in this state on September 1, 2001, is eligible to be included on the commission's list of approved doctors if the doctor:

(1) registers with the commission in the manner prescribed by commission rules; and

(2) complies with the requirements adopted by the commission under this section.

(b) The commission by rule shall establish reasonable requirements for doctors and health care providers financially related to those doctors regarding training, impairment rating testing, and disclosure of financial interests as required by Section 413.041, and for monitoring of those doctors and health care providers as provided by Sections 408.0231 and 413.0512. The commission by rule shall provide a reasonable period, not to exceed 18 months after the adoption of rules

under this section, for doctors to comply with the registration and training requirements of this subchapter. Except as otherwise provided by this section, the requirements under this subsection apply to doctors and other health care providers who:

(1) provide health care services as treating doctors;

(2) provide health care services as authorized by this chapter;

(3) perform medical peer review under this subtitle;

(4) perform utilization review of medical benefits provided under this subtitle; or

(5) provide health care services on referral from a treating doctor, as provided by commission rule.

(c) The commission shall issue to a doctor who is approved by the commission a certificate of registration. In determining whether to issue a certificate of registration, the commission may consider and condition its approval on any practice restrictions applicable to the applicant that are relevant to services provided under this subtitle. The commission

who are approved to provide health care services" authorized by the workers' compensation laws. *See Id.*

To establish that the legislature granted discretion to the TWCC to remove a doctor from its approved list, the TWCC also directs us to section 408.0231. This statu-tory provision, which was in effect at the time of the hearing and the entry of the trial court's order, provided the means for removing a doctor from TWCC's approved list.[3] *See* Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 1.01, 2001 Tex. Gen. Laws 5169 (amended 2005) (current version at

---

may also consider the practice restrictions of an applicant when determining appropriate sanctions under Section 408.0231.

(d) A certificate of registration issued under this section is valid, unless revoked, suspended, or revised, for the period provided by commission rule and may be renewed on application to the commission. The commission shall provide notice to each doctor on the approved doctor list of the pending expiration of the doctor's certificate of registration not later than the 60th day before the date of expiration of the certificate.

(e) Notwithstanding other provisions of this section, a doctor not licensed in this state but licensed in another state or jurisdiction who treats employees or performs utilization review of health care for an insurance carrier may apply for a certificate of registration under this section to be included on the commission's list of approved doctors.

( f) Except in an emergency or for immediate post-injury medical care as defined by commission rule, or as provided by Subsection (h) or (i), each doctor who performs functions under this subtitle, including examinations under this chapter, must hold a certificate of registration and be on the list of approved doctors in order to perform services or receive payment for those services.

(g) The commission by rule shall modify registration and training requirements for doctors who infrequently provide health care, who perform utilization review or peer review functions for insurance carriers, or who participate in regional networks established under this subchapter, as necessary to ensure that those doctors are informed of the regulations that affect health care benefit delivery under this subtitle.

(h) Notwithstanding Section 4(h), Article 21.58A, Insurance Code, a utilization review agent that uses doctors to perform reviews of health care services provided under this subtitle may use doctors licensed by another state to perform the reviews, but the reviews must be performed under the direction of a doctor licensed to practice in this state.

(i) The commission may grant exceptions to the requirement imposed under Subsection (f) as necessary to ensure that:

(1) employees have access to health care; and

(2) insurance carriers have access to evaluations of an employee's health care and income benefit eligibility as provided by this subtitle.

(j) The injured employee's treating doctor is responsible for the efficient management of medical care as required by Section 408.025(c) and commission rules. The commission shall collect information regarding:

(1) return-to-work outcomes;

(2) patient satisfaction; and

(3) cost and utilization of health care provided or authorized by a treating doctor on the list of approved doctors.

(k) The commission may adopt rules to define the role of the treating doctor and to specify outcome information to be collected for a treating doctor.

Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 1.01, 2001 Tex. Gen. Laws 5168 (amended 2005) (current version at Tex. Lab. Code Ann. § 408.023 (Vernon Supp.2005)).

**3.** Sec. 408.0231. MAINTENANCE OF LIST OF APPROVED DOCTORS; SANCTIONS AND PRIVILEGES RELATING TO HEALTH CARE.

(a) The executive director shall delete from the list of approved doctors a doctor:

(1) who fails to register with the commission as provided by this chapter and commission rules;

(2) who is deceased;

(3) whose license to practice in this state is revoked, suspended, or not renewed by the appropriate licensing authority; or

(4) who requests to be removed from the list.

(b) The commission by rule shall establish criteria for:

(1) deleting or suspending a doctor from the list of approved doctors;

Tex. Lab.Code Ann. § 408.0231 (Vernon Supp.2005)).

Pursuant to its rule-making authority granted by the Texas Legislature, the

TWCC promulgated and adopted rules effective March 14, 2002 pertinent to removing a physician from it approved list. *See* 28 Tex. Admin. Code § 180.26 (2005)

(2) imposing sanctions on a doctor or an insurance carrier as provided by this section;

(3) monitoring of utilization review agents, as provided by a memorandum of understanding between the commission and the Texas Department of Insurance; and

(4) authorizing increased or reduced utilization review and preauthorization controls on a doctor.

(c) Rules adopted under Subsection (b) are in addition to, and do not affect, the rules adopted under Section 415.023(b). The criteria for deleting a doctor from the list or for recommending or imposing sanctions may include anything the commission considers relevant, including:

(1) a sanction of the doctor by the commission for a violation of Chapter 413 or Chapter 415;

(2) a sanction by the Medicare or Medicaid program for:

(A) substandard medical care;

(B) overcharging;

(C) overutilization of medical services; or

(D) any other substantive noncompliance with requirements of those programs regarding professional practice or billing;

(3) evidence from the commission's medical records that the applicable insurance carrier's utilization review practices or the doctor's charges, fees, diagnoses, treatments, evaluations, or impairment ratings are substantially different from those the commission finds to be fair and reasonable based on either a single determination or a pattern of practice;

(4) a suspension or other relevant practice restriction of the doctor's license by an appropriate licensing authority;

(5) professional failure to practice medicine or provide health care, including chiropractic care, in an acceptable manner consistent with the public health, safety, and welfare;

(6) findings of fact and conclusions of law made by a court, an administrative law judge of the State Office of Administrative Hearings, or a licensing or regulatory authority; or

(7) a criminal conviction.

(d) The commission by rule shall establish procedures under which a doctor may apply for:

(1) reinstatement to the list of approved doctors; or

(2) restoration of doctor practice privileges removed by the commission based on sanctions imposed under this section.

(e) The commission shall act on a recommendation by the medical advisor selected under Section 413.0511 and, after notice and the opportunity for a hearing, may impose sanctions under this section on a doctor or an insurance carrier or may recommend action regarding a utilization review agent. The commission and the Texas Department of Insurance shall enter into a memorandum of understanding to coordinate the regulation of insurance carriers and utilization review agents as necessary to ensure:

(1) compliance with applicable regulations; and

(2) that appropriate health care decisions are reached under this subtitle and under Article 21.58A, Insurance Code.

(f) The sanctions the commission may recommend or impose under this section include:

(1) reduction of allowable reimbursement;

(2) mandatory preauthorization of all or certain health care services;

(3) required peer review monitoring, reporting, and audit;

(4) deletion or suspension from the approved doctor list and the designated doctor list;

(5) restrictions on appointment under this chapter;

(6) conditions or restrictions on an insurance carrier regarding actions by insurance carriers under this subtitle in accordance with the memorandum of understanding adopted between the commission and the Texas Department of Insurance regarding Article 21.58A, Insurance Code; and

(7) mandatory participation in training classes or other courses as established or certified by the commission.

Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 1.01, 2001 Tex. Gen. Laws 5169 (amended 2005) (current version at Tex. Lab. Code Ann. § 408.0231 (Vernon Supp.2005)).

(TWCC, Doctor and Insurance Carrier Sanctions). The evidence introduced at the hearing shows that Dr. Baker's removal from the list of approved doctors relates to several factors that the TWCC considers before taking such action. Thus, based on the evidence submitted to the trial court, no reasonable fact finder could conclude that the TWCC's action to remove Dr. Baker from its list of approved physicians was unlawful.

In summary, the legislature mandates that the TWCC provide health care services to employees covered by workers' compensation insurance. Tex. Lab.Code Ann. § 408.021(a). In 2001, the legislature authorized the TWCC to establish rules for deleting or suspending a doctor from its approved list. Tex. Lab.Code Ann. § 408.0231(b)(1) (Vernon Supp.2005). The TWCC established rules and subsequently acted within its legal authority in deleting Dr. Baker from its approved list based on considerations that are contained within its rules.

 In granting the temporary injunction, the trial court apparently granted Horton's request that the TWCC reinstate Dr. Baker because of the scarcity of orthopedic surgeons in Jasper County, Texas. Although the TWCC must provide reasonable and necessary medical care for injured workers who sustain compensable injuries, this duty does not require the TWCC to provide care by a particular physician. Any determination that a particular physician must render care, to the exclusion of others who could provide reasonable and necessary medical care, falls into the category of "controlling an official within his legal authority to act." *See King v. Texas Dep't of Human Servs. ex rel. Bost,* 28 S.W.3d 27, 33 (Tex.App.-Austin 2000, no pet.) (quoting *Harrison v. Bunnell,* 420 S.W.2d 777, 779 (Tex.Civ.App.-Austin 1967, no writ)).

We also note that under section 408.023(i), the TWCC is allowed to grant exceptions to the requirement that doctors providing care for compensable injuries be on its approved list. *See* 2001 Tex. Gen. Laws at 5168. This exception insures that employees have access to healthcare. The trial court's attempt to affirmatively require the TWCC to accept Dr. Baker as the physician who will provide care, not only to Horton but to any employee, constitutes a prohibited effort to manage state action. Horton has not met his burden of demonstrating that the doctrine of sovereign immunity does not bar his claim for injunctive relief.

The Austin Court of Appeals reached a similar conclusion in a case involving a decision made by the Department of Human Services to promote one employee over another. *King,* 28 S.W.3d at 33. The unsuccessful employee sought injunctive relief vacating the Department's decision and awarding the position to him. The Austin Court held that:

> [King's] request to order the Department to place him in the position of supervising attorney with concomitant duties, responsibilities, and pay falls into the category of 'controlling an official within his legal authority to act' and is barred by the sovereign immunity doctrine. [citing *Harrison v. Bunnell,* 420 S.W.2d 777, 779 (Tex.Civ.App.-Austin 1967, no writ)]. The trial court would have jurisdiction only to declare the hiring process invalid and set aside the agency's decision. Thus, only King's specific request for relief vacating the award is *not* barred by sovereign immunity.

*Id.* at 33–34 (citations omitted).

 The other basis for injunctive relief against a state agency arises when the agency's activity violates the Constitution.

*Director of Dep't of Agric. & Env't,* 600 S.W.2d at 266. We need mention this basis only briefly. A claim that a statute is unconstitutional as applied to a particular plaintiff is a plea in confession or avoidance and must be pleaded under the Rules of Civil Procedure. Tex.R. Civ. P. 94; *Walker v. Gutierrez,* 111 S.W.3d 56, 66 (Tex.2003) (party challenging statute has burden to prove unconstitutionality); *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 222 (Tex.2002) (open-courts claim not preserved on appeal when it was not raised in trial court); *In re Doe 2,* 19 S.W.3d 278, 284 (Tex.2000) (recognizing that trial court is generally without authority to reach the question of the constitutionality of a statute absent a pleading raising the issue of unconstitutionality). Because Horton raised no claim in the trial court that the TWCC could not constitutionally remove Dr. Baker from its list of approved medical providers, there is no challenge before us on appeal based on the constitutionality of the statute as applied to Horton.

 Generally, a court cannot require the TWCC to place a doctor on its approved physician list. By virtue of the legislature's enactment of section 408.0231(b) of the Texas Labor Code, the legislature granted the TWCC discretion to manage and administer its list of approved physicians. Thus, Horton's effort to control the TWCC's exercise of discretion, otherwise validly given to the TWCC by the legislature, constitutes a suit seeking to control state action and may not be maintained absent legislative permission. Under the facts and circumstances presented here, we hold that the doctrine of sovereign immunity deprived the trial court of subject matter jurisdiction. We limit our holding to the circumstances presented by the pleadings and record here as circumstances in other cases might merit judicial review of the TWCC's actions.

### Conclusion

Horton's pleadings and evidence do not demonstrate that the trial court had subject-matter jurisdiction to grant the temporary injunction. We reverse the trial court's order granting temporary injunctive relief, thereby dissolving the temporary injunction, and remand the matter to the trial court for further proceedings.

**REVERSED AND REMANDED.**